**UNITED STATES of America,**
**Appellee,**

v.

**Raul RAMIREZ, Defendant–Appellant.**

**Docket No. 04–3147–CR.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 4, 2005.
Decided Aug. 26, 2005.

Timothy W. Hoover (MaryBeth Covert, on the brief), Federal Public Defender's Office, Western District of New York, Buffalo, New York for Defendant–Appellant.

Stephan J. Baczynski, Assistant United States Attorney (Michael A. Battle, United States Attorney for the Western District of New York, on the brief), Buffalo, New York, for Appellee.

Before: WALKER, Chief Judge, HALL and GIBSON,* Circuit Judges.

JOHN M. WALKER, JR., Chief Judge.

Defendant–Appellant Raul Ramirez appeals from a judgment entered on May 27, 2004, in the United States District Court for the Western District of New York (Richard J. Arcara, *Chief Judge* ), sentencing him to 46 months' imprisonment. On appeal, Ramirez argues that the district court erred in finding that each of the two prior "conditional discharge" sentences he received under N.Y. Penal Law § 65.05 was a "term of probation" for purposes of § 4A1.2(c)(1)(A) of the United States Sentencing Guidelines (2003) ("U.S.S.G." or

---

* The Honorable John R. Gibson, of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

"Guidelines"), and thus subject to inclusion in Ramirez's criminal-history score. We find that the sentences were properly counted under § 4A1.2(c)(1)(A), and accordingly affirm this part of the district court's decision.

Ramirez also challenges the district court's determination, based on information in the presentence report ("PSR") and an unidentified Spanish-language document, that Ramirez had previously been convicted of two offenses in Puerto Rico that should be counted in calculating his sentence under the Guidelines. Because, as is explained below, we are remanding this case to allow the district court to consider whether to resentence Ramirez in accordance with *United States v. Crosby,* 397 F.3d 103 (2d Cir.2005), we decline to address the validity of the district court's finding with regard to the Puerto Rican convictions. To facilitate the resolution of this issue in any future appeal taken by Ramirez, however, we direct the district court, upon remand, to clarify the nature and contents of the Spanish-language document on which it relied, and to include that document in the record.

## BACKGROUND

In June 2003, Ramirez pleaded guilty in the district court, pursuant to an agreement with the government, to one count of conspiracy to possess heroin with the intent to distribute. In the plea agreement, Ramirez conceded that he had been paid $40 to claim two packages at the post office that he knew contained heroin. The agreement contemplated a base offense level of 20 and the application of a 3–level downward adjustment for acceptance of responsibility under U.S.S.G. §§ 3E1.1(a) and (b), yielding a total offense level of 17. The agreement added two points to Ramirez's criminal-history score for a 1997 misdemeanor conviction in New York state

court for unauthorized use of a motor vehicle, bringing Ramirez's criminal-history category to level II. The applicable Guideline range under these calculations was 27 to 33 months' imprisonment.

Prior to sentencing, the Probation Office issued a PSR that suggested Ramirez had been involved in past criminal conduct unaccounted for in the plea agreement. The PSR disclosed two convictions in New York state court for which Ramirez received "conditional discharge" sentences under N.Y. Penal Law § 65.05: a 1996 plea to one count of disorderly conduct, and a 1997 plea to one count of driving without a license. The PSR recommended adding one criminal-history point for each of these convictions under U.S.S.G. § 4A1.1(c). The PSR also cited two convictions in the Superior Court of Puerto Rico, one for conjugal abuse, threats, and violation of the Puerto Rican weapons law in October 1993, and the other in February 1994 for possession of a controlled substance. The PSR indicated that Ramirez had been sentenced to one term of eighteen months' imprisonment and two terms of six months' imprisonment on the various counts of the October 1993 conviction, and one term of two years' imprisonment for the February 1994 conviction. The PSR recommended adding three criminal-history points for each of the Puerto Rican convictions, under U.S.S.G. § 4A1.1(a).

The eight additional criminal-history points recommended in the PSR (together with the two points contemplated in the plea agreement) brought Ramirez's criminal-history score to 10, and placed him in category V. An offense level of 17 and a criminal-history category of V produced a Guidelines range of 46 to 57 months' imprisonment. Prior to sentencing, Ramirez objected to the inclusion of all eight additional criminal-history points. He argued that because the two New York state con-

victions (for disorderly conduct and driving without a license) were on the list of excludable minor offenses in U.S.S.G. § 4A1.2(c)(1), they should not be counted in calculating his criminal history. While Ramirez recognized that, under § 4A1.2(c)(1)(A), such offenses, even if on the list of excludable offenses, must be counted if "the sentence [received for the offense] was a term of probation of at least one year," he contended that the sentence of conditional discharge he had received under New York law did not amount to "probation," as the term is used in § 4A1.2(c)(1)(A). Thus, Ramirez argued that the PSR erroneously added two points for his convictions for disorderly conduct and driving without a license.

Ramirez also argued that the district court should not include the Puerto Rican convictions in his criminal-history calculation. He claimed that the information contained in the PSR lacked "sufficient indica of reliability" because it had been obtained through "some kind of non-court database," and had not been verified by documentary evidence or through contact with the court in Puerto Rico. Ramirez also pointed out that the Probation Office had been unable to obtain a date of arrest for the February 1994 conviction. Thus, according to Ramirez, it was possible that the offense resulting in the February 1994 conviction occurred on the same day as

that resulting in the October 1993 conviction. If that were so, he argued, the two offenses would be "related" under U.S.S.G. § 4A1.2(a)(2), and, pursuant to that provision, only one of them could be counted in his criminal-history score.

The district court imposed sentence in May 2004. It found that a one-year conditional-discharge sentence under New York law "is [the] equivalent of a one-year term of probation for purposes of [U.S.S.G. § 4A1.2(c)(1)(A) ]" because the statute describing conditional discharge, N.Y. Penal Law § 65.05, provides that such a sentence can be modified or revoked if the terms of the discharge are violated. The district court thus followed the PSR's recommendation to add one criminal-history point for each of Ramirez's two offenses carrying a conditional-discharge sentence.[1] The district court also agreed with the PSR that six criminal-history points should be added for Ramirez's convictions in Puerto Rico. The court stated that it had recently "received documentation from Puerto Rico," and that "although the document is in Spanish, the Court has been able to discern that it does in fact support the inclusion of [the Puerto Rican convictions described in the PSR]." The court did not describe the document or otherwise address its contents.

After it was clear that the district court would sentence Ramirez based on a crimi-

---

1. The district court found, in the alternative, that these two prior offenses should be counted in Ramirez's criminal history under the exception in § 4A1.2(c)(1)(B), which provides that prior offenses, even if on the list of excludable offenses, must be counted if "the prior offense was similar to an instant offense." Because the PSR indicated that Ramirez had been charged with possession of a hypodermic instrument when he was arrested for driving without a license, and that he had been charged with possessing heroin when he was arrested for disorderly conduct, the district court found that Ramirez's driving and

disorderly-conduct offenses were "similar to" the drug offense for which he was being sentenced. Ramirez argued below, as he does on appeal, that because the prior drug-related charges had been dismissed, the offenses for which he had been sentenced were not similar to his current offense. Because we find, below, that the district court properly added one point for each of Ramirez's driving and disorderly-conduct offenses under § 4A1.2(c)(1)(A), we express no view on the district court's alternative ruling under § 4A1.2(c)(1)(B).

nal-history category of V, Ramirez moved for a downward departure, arguing that the criminal-history category over-represented the seriousness of his criminal record. The court declined to depart. Finding the applicable Guidelines range to be 46 to 57 months, the district court sentenced Ramirez to 46 months' imprisonment. Ramirez appealed.

## DISCUSSION

### I. "Probation" Under § 4A1.2(c)(1)(A)

The district court ruled that a one-year conditional-discharge sentence under N.Y. Penal Law § 65.05 is the equivalent of "a term of probation of at least one year" under U.S.S.G. § 4A1.2(c)(1)(A).[2] This determination called for the interpretation of a Guidelines provision and thus raises a question of law that is subject to de novo review in our court. *See United States v. Rubenstein*, 403 F.3d 93, 99 (2d Cir.2005); *United States v. Vasquez*, 389 F.3d 65, 68 (2d Cir.2004).

In general, no criminal-history points are assessed for prior sentences imposed for the fifteen offenses listed under § 4A1.2(c)(1). That list of offenses includes "driving without a license" and "disorderly conduct." *See* § 4A1.2(c)(1). This rule, however, is subject to exceptions in §§ 4A1.2(c)(1)(A) and (B). The first of these exceptions provides that sentences imposed for the listed offenses are counted in the criminal-history calculation if "the sentence was a term of probation of at least one year or a term of imprisonment

of at least thirty days ...." U.S.S.G. § 4A1.2(c)(1)(A).

Ramirez argues that the term "probation" self-evidently does not include a conditional-discharge sentence like the one authorized by N.Y. Penal Law § 65.05 because such a sentence does not contemplate active supervision by a probation officer. Section 65.05 allows a sentencing court to release a convicted defendant into the community on condition that he abide by a set of court-imposed terms, but does not require that these terms include reporting to a probation officer or other supervisory official. Indeed, there is a separate New York statute defining "probation," which does contain such a requirement. *See* N.Y. Penal Law § 65.00; § 65.10(3). Although many, if not most, of the conditions that may be imposed for "probation" and "conditional discharge" under New York law are the same, *see* N.Y. Penal Law § 65.10, "probation" is the more onerous sentence. *See, e.g., id.* § 65.05(1)(a) (conditional discharge may only be imposed where the sentencing court finds that "probation supervision is not appropriate").

■ The fact that New York nominally distinguishes between "probation" and "conditional discharge" is of limited relevance to defining the meaning of the term "probation" as used in § 4A1.2(c)(1)(A). The section of the Guidelines dealing with criminal history is designed to account for convictions "in the federal system, fifty

---

**2.** The duration of Ramirez's two conditional-discharge sentences is not revealed in the PSR or elsewhere in the record on appeal. Because the prior offenses for which Ramirez received these sentences were violations subject to a one-year term of conditional discharge, *see* N.Y. Penal Law § 65.05(3)(b), and because Ramirez appears to concede that one-year terms were in fact imposed, we assume that the duration of each of Ramirez's

conditional-discharge sentences was one year. While the exact conditions imposed on those sentences are not clear, we also assume, as provided in the New York statute authorizing conditional discharge, that the sentencing court retained the power during that period to "modify or enlarge the conditions or, if [Ramirez committed] an additional offense or violate[d] a condition, revoke the sentence ...." *Id.* § 65.05(2).

state systems, the District of Columbia, territories, and foreign, tribal, and military courts," and to accommodate "jurisdictional variations in offense definitions, sentencing structures, and manner of sentence pronouncement." U.S.S.G. § 4A1.1 cmt. background. Thus, the terminology of punishment employed by a particular state is of limited value in interpreting the meaning of the guideline. Similarly, it is not sufficient to say that because probation under the *federal* system contemplates supervision by a probation officer, the Sentencing Commission must have used the term "probation" to mean only those non-incarcerative sentences in the state system that include a similar supervisory component. In any event, under the federal probation statute, "reporting to a probation officer" is not a necessary condition of probation. *See* 18 U.S.C. § 3563(a). Reporting to a probation officer, answering inquiries of the officer, and notifying the officer of arrests or changes of address are all discretionary conditions, *see id.* § 3562(b)(15),(17),(18), and although typically among the conditions imposed, they are not essential to probation as it is understood in federal law. This broader conception of probation corresponds with the generally accepted meaning of the term. *See Black's Law Dictionary* 1220 (7th ed.1999) (defining probation as "[a] court-imposed criminal sentence that, subject to stated conditions, releases a convicted person into the community instead of sending the criminal to jail or prison."); *Webster's Third New International Dictionary* 1806 (1981) (defining probation as "the action of suspending the sentence of a convicted offender in such a way that the offender is given freedom after promising good behavior and agreeing to a varying degree of supervision, to the *usually* imposed condition of making a report to a particular officer or court at stated intervals, and to

any other additionally specified conditions") (emphasis added).

■ The use of "probation" in other parts of §§ 4A1.1 and 4A1.2 further confirms our view that the Sentencing Commission used the term in a broad sense, to encompass any sentence that is conditioned on the defendant's compliance with a prescribed set of requirements, where the offense of conviction provides for the possibility of imprisonment. Section 4A1.1(d) instructs that the sentencing court should add two criminal-history points "if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." The Application Note explains that

> [f]or the purposes of this item, a "criminal justice sentence" means a sentence countable under § 4A1.2 ... having a custodial or supervisory component, although active supervision is not required for this item to apply. For example, a term of unsupervised probation would be included; but a sentence to pay a fine, by itself, would not be included.

U.S.S.G. § 4A1.1, cmt. n.4. In light of this commentary, we have held that § 4A1.1(d) includes a sentence of conditional discharge under N.Y. Penal Law § 65.05, because while § 65.05 does not require "active supervision," it has a "supervisory component" insofar as the sentencing court can revoke or modify the sentence if the defendant violates a condition. *See United States v. Labella–Szuba*, 92 F.3d 136, 138 (2d Cir.1996) ("[T]here is no discernible difference between a conditional discharge sentence [under § 65.05] and a sentence of unsupervised release."); *see also United States v. Miller*, 56 F.3d 719, 722 (6th Cir.1995); *United States v. Lloyd*, 43 F.3d 1183, 1188 (8th Cir.1994).

■ While § 4A1.1(d) is not at issue in Ramirez's case and our observations concerning that provision's relationship to § 65.05 do not control our interpretation of § 4A1.2(c)(1)(A), the use of the term "probation" in § 4A1.1.(d) bears on its intended meaning in § 4A1.2(c)(1)(A). If one views the list of criminal-justice sentences in § 4A1.1(d) as an exclusive list of the kinds of sentences qualifying under that section, our reading in *Labella–Szuba* of § 4A1.1(d) to encompass a sentence imposed under § 65.05 supports the view that the Sentencing Commission considered conditional discharge to be a form of probation. Even assuming that the list is only descriptive, however, the use of the term "unsupervised probation" in the application note still implies that, properly understood, "probation" is a broad term that contemplates conditional non-incarcerative sentences that do not involve active supervision by a probation officer. *See United States v. Caputo,* 978 F.2d 972, 977 (7th Cir.1992) (relying on § 4A1.1(d), cmt. n.4 in holding that conditional discharge is a form of probation under § 4A1.2(c)(1)(A)).

■ It is certainly true, as we have noted, that "probation" and "conditional discharge" are distinct sentences as defined by the relevant New York statutes, and that conditional discharge is generally the less severe of the two. Probation can only be imposed following a defendant's conviction for a "crime" under New York law; it cannot be imposed, as can conditional discharge, following conviction for a "violation" or traffic infraction. *See* N.Y. Penal Law §§ 65.00, 65.05; William C. Donnino, *Practice Commentary,* published with N.Y. Penal Law Article 65 (McKinney's 2004). When a court imposes probation, moreover, it must require that the defendant report to a probation officer and remain within the jurisdiction of the court,

*see* N.Y. Penal Law § 65.10(3), while a court is not obliged to include these requirements when imposing a sentence of conditional discharge, *see id.* § 65.10. Ramirez urges us to consider these differences in interpreting § 4A1.2(c)(1)(A) because, he contends, the subsection is meant to ensure that only sufficiently serious offenses are counted in a defendant's criminal history. He argues in this regard that counting a one-year conditional-discharge sentence under § 4A1.2(c)(1)(A) in his case will unjustly inflate his criminal-history calculation because the maximum allowable prison sentence under New York law for the convictions at issue is fifteen days. *See* N.Y. Penal Law § 70.15(4) (disorderly conduct violation punishable by up to fifteen days' imprisonment); N.Y. Vehicle and Traffic Law § 509(11) (driving without a license punishable by a fine or up to fifteen days' imprisonment, or both). Because § 4A1.2(c)(1)(A) provides that sentences imposed for the listed minor offenses should be counted only if "the sentence was a term of probation of at least one year *or a term of imprisonment of at least thirty days*" (emphasis added), defendants, like Ramirez, who were subject to a maximum sentence of less than thirty days but spared any time in prison by a one-year conditional-discharge would receive criminal-history points, while those who were forced to serve a prison term would not.

The existence of this potential incongruity in the guideline fails to persuade us that Ramirez's construction of § 4A1.2(c)(1)(A) is correct. Under New York law a conditional-discharge sentence may, as here, be imposed following conviction for a violation carrying a maximum prison sentence that is less than thirty days; but it may also be imposed following conviction for a misdemeanor, *see* N.Y. Penal Law § 65.05(3)(b); *People v. Leffler,* 13 A.D.3d 164, 786 N.Y.S.2d 474, 475 (2004) (noting that de-

fendant received conditional discharge for misdemeanor convictions), or indeed, for a felony, *see* N.Y. Penal Law § 65.05(3)(a); *People v. Sauger*, 58 A.D.2d 919, 396 N.Y.S.2d 910, 911 (1977) (noting that defendant received conditional discharge for felony conviction). Of course, misdemeanor and felony convictions under New York law contemplate prison terms well in excess of thirty days. *See, e.g.,* N.Y. Penal Law § 70.15(1) (maximum prison term for Class A misdemeanor is one year); *id.* § 70.05(2)(e) (maximum prison term for Class D felony is four years). Thus, application of § 4A1.2(c)(1)(A) to conditional-discharge sentences may, depending on the individual case, be entirely consistent with purpose of § 4A1.2(c)(1), which is to assign criminal-history points to defendants who have received substantial sentences for the otherwise minor offenses listed in the provision.

The Sentencing Commission recognized that the criminal-history calculation, in certain cases, might over-represent the seriousness of past offenses, and built flexibility into the system to accommodate such situations. Tracking similar language from past versions of the Guidelines allowing for appropriate adjustments, current section 4A1.3(b)(1) provides for the possibility "that a defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes," and authorizes the sentencing court to consider a downward departure to rectify any injustice created by faithful application of the Guidelines. *See id.; id.* § 4A1.1, cmt. background ("In recognition of the imperfection of the [method used in the Guidelines to calculate criminal history] ... § 4A1.3 authorizes the court to depart from the otherwise applicable criminal history category in certain circumstances.").

We conclude that the district court did not err in determining that Ramirez's one-year conditional-discharge sentence pursuant to § 65.05 was the equivalent of a one-year sentence of probation under § 4A1.2(c)(1)(A); Ramirez's convictions for driving without a license and disorderly conduct were therefore properly counted in calculating his criminal history category.[3] Our holding in this regard is consistent with that of every other circuit court to have considered the issue. *See United States v. Zuniga–Lazaro*, 388 F.3d 308, 315 (7th Cir.2004); *United States v. Rol-*

---

**3.** Nothing we said in *United States v. Morales*, 239 F.3d 113 (2d Cir.2000), or *United States v. Sanders*, 205 F.3d 549 (2d Cir.2000) (per curiam), is inconsistent with our holding today. In *Morales*, we dealt solely with question of whether the defendant's prior harassment conviction was "similar to" any of § 4A1.2(c)(1)'s listed offenses, and thus an excludable minor offense under the Guidelines. *See Morales*, 239 F.3d at 117. We found that the district court had erred in assessing a criminal-history point for the harassment offense, and remanded for resentencing. *Id.* at 120. While the defendant had apparently been given a conditional-discharge sentence for the harassment offense, *id.* at 116, we did not have occasion to consider whether this sentence was the equivalent of a one-year term of probation under § 4A1.2(c)(1)(A), and gave no instructions for the district court to follow in this regard upon remand.

In *Sanders*, we noted that the defendant's conditional-discharge sentence, which "require[d] only that he perform one day of community service," lacked any "custodial or supervisory component" and was not the equivalent of a one-year term of probation under § 4A1.2(c)(1)(A). 205 F.3d at 552 n. 8 (internal quotation marks omitted). This observation is irrelevant to Ramirez's case, where the conditional-discharge sentence at issue lasted for a year, during which period the sentencing court retained the power to revoke his sentence upon the violation of a condition or commission of another offense. *See supra* n. 2.

*lins,* 378 F.3d 535, 538–39 (6th Cir.2004); *United States v. Lloyd,* 43 F.3d 1183, 1187–88 (8th Cir.1994); *Caputo,* 978 F.2d at 977.

II. Prior Offenses in Puerto Rico

Ramirez argues that the district court erred in assessing a total of six criminal-history points for the two Puerto Rican convictions noted in the PSR because 1) the evidence of those convictions did not have "sufficient indicia of reliability to support its probable accuracy," *see* § 6A1.3(a); and 2) the fact of the convictions was not proven to a jury beyond a reasonable doubt and was thus used to enhance Ramirez's sentence under the Guidelines in violation of the Sixth Amendment of the U.S. Constitution.

Apart from these issues, Ramirez would be entitled to a *Crosby* remand because the district court treated the Guidelines as mandatory in determining his sentence. *See United States v. Arteca,* 411 F.3d 315, 322–23 (2d Cir.2005). We therefore remand the case in order to allow the district court to consider whether to resentence Ramirez. Upon remand, the district court ·should also clarify the nature and contents of the Spanish-language document that it apparently relied upon as verifying the information in the PSR regarding the Puerto Rican offenses. The document is not in the record on appeal, the district court did not describe it with any particularity, and the government seemingly is unaware of its contents. It is also not clear to us to what extent the district court was content to rely on the information in the PSR alone, in the absence of independent verification. We express no view as to the propriety of the district court's decision to rely on the Spanish-language document. Because we are remanding pursuant to *Crosby* in any case, we direct the district court to include the document from

Puerto Rico in the record and indicate the information therein on which it is relying. Our *Crosby* remand is without prejudice to any challenge concerning the prior offenses in Puerto Rico that Ramirez wishes to present to the district court or in any subsequent appeal of his sentence.

■ Ramirez's claim that the district court violated his Sixth Amendment right to a jury trial by using the fact of the alleged prior convictions in Puerto Rico to enhance his criminal history category was not raised below, and, in .any event, is foreclosed by the Supreme Court's decision in *Almendarez–Torres v. United States,* 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). *See also United States v. Booker,* 543 U.S. ——, 125 S.Ct. 738, 748, 160 L.Ed.2d 621 (2005); *United States v. Fagans,* 406 F.3d 138, 141–42 (2d Cir.2005).

## CONCLUSION

For the foregoing reasons, the judgment of the district court ·is AFFIRMED insofar as it found that § 4A1.2(c)(1)(A) applies to Ramirez's prior conditional-discharge sentences. The case is REMANDED for further proceedings consistent with this opinion and *United States v. Crosby,* 397 F.3d 103 (2d Cir.2005).